Mr. Clement. Mr. Chief Justice, and may it please the Court, the crime of extortion under the Hobbs Act, like the related crimes of larceny, burglary, and embezzlement, is at bottom a property crime. Accordingly, understanding the scope of obtainable property under the Hobbs Act is critical to deciding the scope of the basic criminal The government has offered you a definition of property that only a prosecutor could love, any intangible right with economic value. But that definition is fundamentally incompatible with this Court's precedents and with Congress's conscious decision in the Hobbs Act to criminalize the New York State crime of extortion, but not the New York crime of coercion. Kennedy. If the jury had returned the verdict, which is at JA 142, and it had marked that the attempt to extort was to extort the commitment, you might still maybe have some causation arguments, but I assume the property argument you're about to make is just irrelevant. Well, I don't think it's irrelevant, Justice Kennedy. I would have a different argument. I think that I would stand first and foremost on this Court's decision in Cleveland, where it recognized that something like, I think, a commitment, certainly the video poker license was at issue there. The Court also referenced an unissued patent. And it recognized that there are things that have value once they're issued, but in the hands of the government they don't have value and, therefore, don't qualify as property. Could the case have been indicted, has it been charged as one in which what they were taking was the commissions that would ultimately have been generated? Well, Justice Kennedy, it might have been possible to say that what was obtained here was money. But I think if the government had prosecuted it under that theory, it would have to prove that somehow the government paid too much. I don't think it could point just to the commissions. And I would analogize it to the McNally case. In the McNally case, you know, there was this scheme in which various sort of friends of government officials were getting the commissions from a workman's compensation policy. And what this Court said is, well, it would have been one thing if the government had come in and said that the government paid commissions that were too high or the government had received inferior quality insurance. But what the government did there instead was sort of take the shortcut and plead that what had happened is the government had been deprived of its interest in having the honest service. Kennedy, but here what the Petitioner wanted were the commissions, ultimately. And you can't commit extortion in order to get them, and that's real money. It's for the government to answer, not you. But do you have any idea why they didn't charge that? Well, I think the reason that they didn't charge that is probably practically twofold. One is that a commitment under New York law and practice is not quite as what it sounds. It's not really a commitment. And the best evidence of that is with the last fund for this particular management company, they got a commitment from the State and there was no ultimate investment made. So there's a subsequent step down the road. So I think that's part of it. The other thing I would say is, as in McNally, I think they would have had to prove that the management fees were somehow excessive or something like that. So they didn't do that. They focused on this recommendation. Well, I took you away from your argument about intangible property. Mr. Klant, just along the same lines, what you're saying is that it still would not be extortion. Let's say somebody in your client's position runs an investment company, wants an investment, wants the fees that come along with that investment, goes to let's say that there's a single person who gets to decide whether to make that investment and so to pay those fees, goes to that person, threatens that person with something terrible happening to him. You're saying that that does not count as extortion, that there's a reason that the government didn't charge it like that? I would say that that — I would say a couple of things. I would say that's a harder case than the one I have before you today. I would say that I don't think that's actually extortion if what they charge is the commitment, not the money that goes — that flows from the government. And then what I would say — and the reason I would say that is because of the fee. Well, they want the investment and the fees that come with the investment. So — and that's why they're threatening the person. Right. And I would say that under McNally, in that kind of case, what the government has to prove is that if they want to make the property, the money interest that the government is paying out and the person is obtaining, they have to show that there's some sort of excessive commission or excessive sort of management fee. Even though they wouldn't have gotten the investment and they wouldn't have gotten the fees absent the threat of force or violence? Again, that would be my position, and I think it would follow from this Court's decisions in cases like Cleveland and McNally, because in McNally, of course, the people who were part of that fraudulent scheme, they were getting commissions from the workman comp program, and the government's theory was just interfering with the government's decision about who to give the workman — where to place the workman's comps policies was enough of an interference to support a fraud conviction. And this Court said no, and one of the things it then said is, well, it would be different. If the government went in and proved that the commissions that were paid were too high or that the government somehow got inadequate insurance, but if all they're doing is saying that what's going on here is sort of the interest of the government in having its employees serve them honestly and in their best interest and not in some third party's best interest, that brings you squarely into honest services, and nobody's saying that doing that's a good thing, but it's the traditional office of the State law crime of coercion. It's because the State law crime of coercion, at least under New York, definition requires force, and here it's a threat of exposure of an embarrassing fact. So what — am I right about that, that the coercion, which is not a Federal crime but is a State crime, requires a threat of force to restrict another's freedom? I don't believe that's correct, Justice Ginsburg. This was charged by New York State authorities as coercion. So the very crime that Congress didn't incorporate into the Hobbs Act, the New York crime of coercion, was charged here. And it's my understanding that the New York crime of coercion, like the earlier version of coercion in the Anti-Racketeering Act of 1934, like the traditional model penal code definition of coercion, it's the — the threat part of it is the same as extortion. So it covers a threat to a person or to property, and it's been interpreted, certainly, to include threats to disclose information like this. So I think the real difference between the crime of extortion and the crime of coercion, both as a general matter and under New York law, is whether or not property is obtained. And that's ultimately what's so problematic about the government's definition here, because their definition is essentially that property includes the autonomy interest of a business to operate free from coercion. Alitoso, what is your definition of property? In your reply brief, you begin by saying that you are not arguing that the property has to be tangible. It includes some forms of intangible property. How would you draw the line? I would say that for property to come within the terms of the Hobbs Act prohibition on obtaining property, it has to be alienable, transferable, movable. That's the critical thing. And so the distinction is not between alienable and inalienable. A patent is an inalienable — I mean, rather, a patent is an intangible property right, but it's transferable, it's obtainable, it is sellable, and so it has the characteristics of things that I think come within the traditional definition. Breyer, what about the mob goes to a grocer and says, you know, you're dead or something if you sell Cheerios, and the reason is because they have a monopoly, some other grocer who's connected has the monopoly, and they threaten him, you say. Now, does that violate Hobbs Act? I think that's what he did was, and he's not going to sell Cheerios. Right. I would say that that hypothetical that you've given me would be coercion. It would not be extortion. Now, in fact, they're doing it to get money, and they do get money, but via the means of the other grocer. And there is nothing in the words of this Act that says that the property has to be taken from the individual whom you coerce. It's easy to imagine situations where the coerced individual has a relationship, direct, special, and so forth, with the person who has the money. So what happens when, say, the mob coerces the person without the property so that he will do a thing such that the person with the property gives them the property? I think at least as I understand your hypothetical, where the relationship between the two parties are basically their competitors, I would say that that's two distinct relationships. Breyer. Oh, I could just make it different. What they do is they get the assistant bank employee, and they threaten him to do such a thing such as shout at a certain time where they know that that shouting will lead them to be able to rob the bank. I mean, you know, it's easy to think of what I can't figure out here is, is there some requirement that the person who is coerced has to be the same person as the person who gives them the property? If the answer to that is no, then none of the government's chamber of horribles is horrible because there's a way around them. Well, I think the answer to it is it depends. I don't think I can give you a definitive that the government's plan is. And you haven't found anything on this. But you'd be making it up now, is that basically it? Well, what I would tell you is I think the assumption of most of the cases is that the person that is the pressure of is the person who is offering up the property. Isn't that what the word extort means? You extort something from someone. It means you get it from him. You don't get it from some third party. I think that's basically right, Justice Scalia. What I would say, though, is I think there's an exception to the following extent, which I think would be open to the government to basically say that within an entity, if you sort of put the pressure on one agent of the corporation and you actually get the money from another agent of the same corporation, that that's probably close enough. And so in this case, if the pressure was put on a particular individual and they obtained, like, actual cash from the government, that might be a different case. But, of course, here, what they received was this commitment, which I think is analogous to the video poker license in the Cleveland case. So I don't think that's probably it. Kagan. But if you think the commitment is real cash, is a real contract, real cash, real property, right, then it wouldn't matter under that, under what you just said, that the threat was made to the general counsel rather than to the final person who issued the money. Isn't that right? I don't disagree with that, Justice Kagan, but I think that's because they're all sort of agents to the same principle. And I'm not sure you get all the way to what Justice Breyer was suggesting, which you can sort of run it through computer. Kagan. But you wouldn't say, well, we're dealing with an organization, so it's only extortion if you threaten the person who writes the check. No. You threaten a person who makes a recommendation to the person who writes the check, that's good enough. Exactly, Your Honor. But what I would also say is, you know, this is a real case and they're real jury findings, and as Justice Kennedy alluded to, there were a variety of theories of property put in front of the jury. They were invited to circle as many of them as they could, as many as they found satisfied, and the only one they circled was the recommendation. Mr. Clement, what is – I'm sort of trying to figure out why you're trying to get the word property to do the work of the obtained part of the statute. Because when you answered Justice Alito, you were using the terms of obtained to define property, which is, in my mind, a sort of strange way to do things, okay? Property generally means value of some sort, and you don't use any of those words in your definition. So what you're using in my mind, and not illogically, is to say that the statute – the second part of the statute has to do some work, so it has to mean that you're taking something of value away from someone else. That makes logical sense to me, and I understand the second piece of your argument, which is the recommendation, not the recommendation, but his honest services wasn't being given to your client, it was being given to the employer. So your client obtained nothing of value for himself. He didn't get anything transferred to him. And that argument makes eminent sense to me. And I tease it out of your brief, but I don't know why you're trying to get our definition of property to do that work. Why isn't the work in the obtained part? Justice Sotomayor, I'm happy to have you rule in favor of my client on obtained or property, and as Shidler too demonstrates, those terms are really kind of married together. And I guess the reason I sort of think that the obtained and the property should be construed together is twofold. One, structurally that's what the statute does. So when you're talking about in a statute property that can be obtained, I think that's a clue that you're not talking about property in its broadest manifestation. And you contrast that with, say, the Clayton Act that talks about disjunctively property and property rights, and there you have a clue that Congress means a very broad conception. When it's talking about it in conjunction with obtained, I think it has a narrower ambit in mind. Sotomayor, so take the government's definition that property is anything of value. Right. All right? And let's assume, because as I said, that seems to have some sort of conceptual appeal. Then make the argument for me. Then make your argument for me why this isn't an obtaining. Well, what I would say is obtaining, as this Court made clear in Shidler too, is not some metaphysical obtaining. I mean, the argument was made to this Court that the abortion protesters obtained the autonomy interest of the business in deciding the clinics, in deciding whether who to serve and when to serve and when to be open and when to be closed. And this Court said no, and it said principally that that's not obtaining. But it's also noted, I guess you'd call it dictum, that, you know, what obviously what the Hobbs Act, based on its common law roots in extortion, is talking about is the kind of property that can be deprived, it can then be transferred, sold, exercised. And I do think, just to get the second part of my answer out, if I could, it's just the common law roots here are also where you see the definition of property can't be as broad as the government suggests, because extortion is one of the classic common law property crimes. The definition of property for purposes of extortion ought to be the same as the definition of property for larceny, embezzlement, burglary. You can't go into somebody's house and steal their honest services or their autonomy interests. So the kind of property you can obtain for purposes of the Hobbs Act is that same kind of alienable, transferable, movable property. Scalia. Suppose that the person coerced here was a corrupt person and had put his recommendation out for bids, okay? He said, you know, I'll recommend whoever pays me the most money. Would that alter this case? If then somebody comes in and says, well, I'm not going to pay you the money, but I'll break your knees if you don't recommend me, would that be extortion? It would not, Justice Scalia. And I would say because if the State of Louisiana in the Cleveland case, if there was a corrupt official who was putting those video poker licenses on sale, on the sly, I don't think that would have changed the result there. This Court said that those kind of government things do not have value in the hands of the government. The fact that somebody, you know, could sort of be corrupt and therefore have a little auction on the side, I don't think changes that basic fact. I would say, too, that there's an important difference here between a hypothetical case where what somebody is trying to do is kind of get something for nothing and essentially get the benefit of the work of a government official. But that's not what's at issue here. This is not a client who's trying to get, like, you know, they wanted an opinion on how to incorporate in the State of New York, and they thought, well, the lawyers are kind of expensive in the private sector, so I'm just going to coerce it from this government official. All they care about in this case is the bottom line, thumbs up, thumbs down recommendation.  And that's not what the Court is trying to do. It's trying to get a unanimous consent committee within the State government, and you had to get unanimous assent to an investment, and there was one holdout. Roberts. Why isn't that you focused on transferability when you began. Why isn't that completely transferable? I have leverage against this official, and if you want him to recommend yes on your investment, you have to pay me a certain amount of money. And you can transfer that. You've got everybody in, say, you know, the association or whatever, and you can auction that off. It seems to me it's perfectly transferable from the defendant to anyone else. With respect, Mr. Chief Justice, I wouldn't think so. Now, there are some voting rights that are transferable in that sense. I mean, if you have a stock, a proxy in a stock or something like that, that may well come within the definition. But when you have these essentially voting or autonomy interests that are really you know, they're sort of inherently inalienable. This recommendation matters because it's the general counsel in the Comptroller's office recommendation. And as a lawyer is going to make recommendations in many other cases as well. And if you have an application coming up and you want a favorable recommendation, you can go to the individual that has the leverage and say, I will pay you this much money if you can get the person to give me a favorable recommendation. And that's transferable from the person with the leverage to someone else. Well, the confident – I mean, I may not be understanding the hypothetical. Certainly, the confidential information that the potential coercer has may be transferable and under this Court's decision in Carpenter, that may be property. But the voting right within the State government or the role within the State government's internal deliberative process, that really belongs to the general counsel. Kennedy, just to make sure that I understand your position, suppose roughly these facts. The general counsel is threatened with something very serious, let's say violence, unless he makes a favorable recommendation. He does. They act on that recommendation. It's a substantial cause in making the investment and the investment is made and they get the money. Violation? I would say no, but I would say it's a much more difficult case. And the reason I would say no is because the government – or I would say potentially no – I would still say that the government has to prove something more, which is that it's an investment where there either was not the optimal investment or they paid too high a commission. And I take that from McNally, because – Well, but that's a causation argument, not whether or not you receive property. Right. Because – but my point is simply that if the government wants – But so far as the property point, in my hypothetical, if the recommendation leads to the contract and the contract leads to the commission and the commission makes money in your pocket, that's property. And so then we just have a causation argument, not a property argument. I think that's right. If what's obtained is money, and that's what the government focuses its prosecution on, then that is – that satisfies the property requirement of the Hobbs Act. If it has to be more property, more money, more money in return for less services or something than otherwise. That's what you're saying. But I don't think that's – I mean, right. But the answer – go ahead, because I – that's the qualification you're making. The McNally qualification. Exactly. Exactly. So you obtain the property, so that box is checked, but the – sorry. The – you said transfer cell, but there's also exercise. And the theory is that the defendant sought to take away the officer's right to make this recommendation, take it away from the officer, exercise it himself. So why doesn't it fit – why isn't this an intangible right taken from one and exercised by another? Justice Ginsburg, I would say that what you've just articulated is exactly the government's theory, and the problem is that I can use that same theory to take any autonomy interest and turn it into property that can be exercised, it can be obtained by somebody and then exercised by them in a way different from the way that the person would otherwise exercise it. And whatever – I mean, you know, we're talking about one word in a three-word phrase in Shidler II, and the first thing I would say is I think it's a mistake to read that phrase the way you would read a statute. But the second thing I would say is the one thing that Chief Justice did not mean with respect to the word exercise is it meant that it opened up a big gap so you could take every coercion case and turn it into an extortion case. Ginsburg. Is this – there is, I take it, no Federal crime that this conduct would fit? You said in New York State has a coercion crime which you say this conduct might fit, but there's no Federal crime? There's no Federal crime, and that's a result of a very deliberative decision by Congress in 1946 in enacting the Hobbs Act. Of course, they had in front of them the model of the Anti-Racketeering Act of 1934 that prohibited both coercion and extortion. Congress made a conscious decision to, in the Hobbs Act, prohibit robbery and extortion, but not pick up the prohibition on coercion. And so there isn't a Federal crime directly on point, but it's a very conscious decision by Congress. And of course, the New York crime on point is exquisitely on point, because not only is there a coercion offense under New York statute, but it is an aggravated offense if the victim is a government official discharging their public duty. And so this is really a situation where the State courts have a crime that directly fits. It's as – I mean, it's almost amazing, because it's not just any State, it's the State of New York. And Congress, in passing the Hobbs Act, was looking at New York law. And they looked at New York law and they said, New York has a coercion prohibition and an extortion prohibition. Ginsburg. And why did New York – was the New York case dropped and the State officials urged the government, the Federal government, to make this a Federal case? Well, I'd be happy to address that. What happened is there were some pretrial rulings, and one of the pretrial rulings gave the defendant an opportunity to do some discovery on the State government to figure out whether this was really done in the discharge of public duties or maybe this was sort of a political thing that was going on. And once that State law discovery happened into the government of Albany, all of a sudden the State prosecution didn't seem like such a great idea anymore. And the Federal prosecutors are just down the street, so they were very happy to lateral it to the Federal prosecutors and have them take it over. And because the Federal offense doesn't have an element of interfering with a public duty, they didn't have to worry about the discovery. And that is just a very concrete illustration of the problem of over-Federalizing crime, because this, we're talking, this is the opposite of the typical public corruption case where you think, well, maybe there are people in the State government who aren't going to, State prosecutors won't be willing to prosecute one of the bigs in the State government, so we need the Federal government to step in. The one thing a State doesn't need extra incentive to do is to protect the integrity of its internal deliberative process from coercion or extortion, for that matter. But the real cost, then, to having these duplicative Federal crimes, and they were front and center in this case, if I reserve the remainder of my time. Roberts Thank you, counsel. Ms. Harrington. Harrington Thank you, Mr. Chief Justice, and may it please the Court. I'd like to start, if I could, where Justice Kennedy began and ended, which is asking whether there would have been extortion if the jury had found here that what the property that was obtained was the commissions at the end of the day after the investment. My friend, Mr. Clement, says no, no, no. McNally says no, but what McNally actually said was the case would have come out differently if the property that had been alleged to be deprived was either money or property, but it also said it would have come out differently if the Commonwealth had been deprived of control over how its money was spent. And that's the type of property that's at issue here, control over a property  Now, this one's a little bit more complicated than that, but it's a little bit more complicated than that. Kagan Now, Ms. Harrington, just to go back to Justice Kennedy's, I mean, suppose was there a reason why it wasn't charged in what seems to me to be the simpler way, which is a threat was made in order to get an investment and in order to get fees to put in your pocket and go away with, and that's extortion. So why wasn't it, why wasn't that the theory of the case? Harrington Well, he was charged with attempting to obtain the commitment, which in most cases ends up being the investment itself. That's not what the jury found was the property that was obtained, so it's not the Kagan Do you think there's an obstacle to charging a case that way? Mr. Clement seems to think that there's an obstacle, that even though there's property in that case, there's some other problem with charging the case that way. Harrington No, that's what I'm saying. What he's saying is that the obstacle is you'd have to prove that the State was out more money than it would have been if it had invested in the company it wanted to invest in. What I'm saying is, no, McNally said the result would have been different if the State had been deprived of control, of the ability to control its money, and that's the property that would have been obtained in that kind of a case. Because property and control of property are just different aspects of the same property. This Court has said repeatedly that exclusive control of property is one vital aspect of private property. And that's the type of property that was charged, that was obtained in this case. Breyer The obvious problem, which you might want to address at some point, is that if you take your definition that this recommendation, legal recommendation is property, and the fellow said, you know, I'm going to fix you if you don't do it, if that's property, we're back to the honest services statute. Because anyone in the government and anyone in business, indeed, everybody has a job, and those jobs always require you to do things. So if every time somebody threatens a person and says, we don't want you to do the thing you're supposed to do, we want you to do the thing like this, well, then you're breaking the property statute. Now, that seems very far-reaching, hard to reconcile with the abortion case, the abortion clinic case, et cetera. And it is easy to reconcile with the honest services case. Harrington Well, I guess I'd have two points. The first is that this is not about honest services, because the victim here is not the State of New York. It wasn't the citizenry of New York. That's the kind of answer. Breyer No, I mean, that sounds technical. You see, the problem I'm interested in is by accepting your definition, do we suddenly throw within the statute, which speaks of property, any time there is an appropriate threat which, as is the condition, the person doing the job differently? That's true of whether it's a postman, you know, any public official, any private official, anybody. That seems very far-reaching, so what's the answer? Kennedy Well, to Justice Breyer's question, suppose the Secretary is the stenographer is in charge with typing the letter, I do not recommend, and they bribe her, and she says, I recommend. She has an interest in her integrity to give an honest transcription under your view, and this is what Justice Breyer is getting at, I think, that that Secretary has property that you're taking. That's very far-reaching. Harrington Well, I want to separate again the question of what is property and when property is obtained. Under the Hobbs Act, the Hobbs Act absorbed the New York State extortion law, and in that, in the cases construing that law, they had construed the word property to include the running of a business, the engagement of a person in their occupation, and the doing of a job. People have property interests in doing those things, because those are the source of economic wealth for those people. They generate a stream of revenue for people to live their lives on. Now, it's a different question. Not every time you interfere with someone's doing of their job are you obtaining that property. Here, what Petitioner was trying to do was not keep the general counsel from making a recommendation. He was attempting to dictate the substance of what the recommendation was. Breyer, I understand that, but I still would like an answer to my question. And it's well phrased with an example by Justice Kennedy. Every Secretary in the United States who is about to write a recommendation for somebody to go to college or some other thing, then is faced with a threat. You put in name such and such, or put in yes instead of no. And is, under your definition, that person, property, that what she does, the taking of property? And the answer is either you think yes, in which case I would like you to defend it. Yes. Or the answer yes. Okay. Then what conceivable ground? I'm not going to want to be that sounds a little pejorative, but I say what ground is there for a definition that is so broad that sweeps within it all working people in the United States in the performance of their ordinary jobs? The ground is the general particularized meaning that the word property has obtained in the law, and including in New York cases construing the very law on which the Hobbs Act was based. A person has a property interest in running their business. They also have a property interest in doing their job. When someone comes along and uses threats of harm or threats of force or violence to try to get them to do their job in a different way, what they're doing is they're taking control of that property interest that the person has. Scalia I have a property interest in doing my job. I don't know what that means. I mean, just throwing words around. You're calling doing a job a property interest. Normally when I think of property, I think of something that can be conveyed. Can I convey the doing of my job to somebody else? Well, you can convey your labor to your employer in that sense. When you enter an employment contract, you're selling your labor to your employer. And the extent of your right to do that job is then defined by the parameters of your job. Scalia I'm not talking about my labor. I'm talking about my doing the job that the employer has assigned to me. But that is your labor. Scalia Not my labor in the abstract. Nobody is taking my labor away from me. But in this case, what Petitioner was trying to take was the fruits of the general counsel's labor. His job was to give his recommendation to his client about what was in keeping with the client's. Scalia Can you cite one extortion case at common law? Or let me put it another way. What is the closest extortion case at common law that you can allude to? We're using a common law term here, extortion. Yes, but it was a different crime at common law, because it only involved public officials taking money or other thing of value in exchange for doing something that was not a crime. Whatever. What's the closest that comes to this abstract, the doing of my job is proper? I don't have an example of that, but what I do have are examples from the New York cases, which were construing the New York State extortion law. And this Court has noted again and again that that's the basis for the Hobbs Act. Congress was explicitly trying to get rid of that. What's the closest New York case? So there are two cases, the Barron desk case and the short case are the best cases. And in the Barron desk case, which is from 1893, I think, the Court said that the running of a business was property. And in the short case, the Court said that just the same way that the running of a business is property, a person's doing their job is property. And that can be damaged. How was it taken? Can you tell us a little more? How was it taken? Well, in those cases, the property wasn't taken. Under the New York extortion law, the law used property in two different places, and this is noted in our brief. First, it was something that could be taken or could be obtained through extortion. And second, it was one of the means of committing extortion was doing violence to property, was harming property. And the Court was construing property. In those cases, it was in the latter sense of what qualified as harm to property. But the Court said in the short case, which is from 1911, the Court noted that property is used in both provisions, section 850 and section 851, and said it was construing it as it was used in both of those sections. And in that, that was the case that said doing the person's job, the person has a property interest in doing their job. Ms. Harrington, go back to the Shidler example, because that was a case where we said there was not extortion when there were threats of violence meant to close down an abortion clinic's operations. What you are suggesting is that if those threats of violence had been targeted at the abortion clinic's lawyer in order to get him to tell the clinic to shut down their operations because they were a violation of law, that it would be an entirely different case. Now, how could that be? Harrington, That's absolutely what we are saying. In the same way that we said that if the target of the extortion, if the protesters, excuse me, had been trying to get the clinics, if they had been trying to take over the clinics and get them to provide a different type of service, to get them to be a restaurant or to provide a different type of medical service, then they would have been obtaining the right of the clinic to run, to operate their business. Kagan So you think if they targeted the clinic's lawyer or if they – if the threats were don't shut down the clinic, instead start delivering babies, that that would be extortion, whereas in the real case it wasn't? Harrington, Yes, because Shidler came out the way it did, not because there wasn't property at issue, but because there wasn't an obtaining. And I do think it's important to try to keep those things separate. Kagan And there's not an obtaining either way. I mean, you are trying to change what the person is doing, but you are not getting anything from it. But you are dictating the substance of what they are doing, and so you are obtaining their right to exercise their property right. Scalia Well, that's the problem with your New York cases as well. You are focusing on property in another context, where the property is harmed, not whether property is taken. You have neither a New York case nor any other common law case involving extortion where the property taken consists of somebody's doing his job. Harrington, It's true, but the New York courses, the New York cases said that they were constraining the word property to mean the same thing as used in both places in the statute. And there is no reason to define the word property to include the concept of being obtainable, because the statute already separately requires that property be obtained before there is extortion. Just, if I can just note that the property is obtained before there is extortion. Scalia I'm not sure that obtainable property and harmable property are one and the same thing. I'm really not. Harrington, They might not be, but they are both, but property is property. That's our position. That there is a legal meaning of property. It includes the right to run a business, the right to engage in an occupation. In a particular instance, that property may not be obtainable, and then there won't be a Hobbs Act violation. But you don't have to read the obtainability into the definition of property. It's the same thing. The Hobbs Act also says that you can commit a violation by committing physical violence against property. Now, in their opening brief, Petitioner said, well, if something can't be physically harmed, it can't be property. We were happy to see in the reply brief they sort of gave that up by saying, okay, yeah, well, business secrets are property, a patent is property. Those things can't be physically harmed. But there's no reason to read property to mean different things. If something can't be physically harmed, it won't be the basis for liability under that provision of the Hobbs Act. Scalia You're contradicting what you yourself said a little bit before, which is that property means the same thing for both provisions. Harrington, No, that's exactly what I'm saying. Scalia For both the obtaining and the harming. Harrington, That's exactly. Scalia But it doesn't mean the same thing for the harming, because there's some property that can't be harmed. Harrington, Right, but that doesn't mean that property means something different. It just means if it's property that can't be harmed, then it won't be a basis for liability under that provision. I'm just saying you don't want to give a different definition to the same word used different times in the same statute when the concept is where the work is carried by other words in the statute. I think if I could point to that. Sotomayor Going back a little bit to Justice Breyer's question, how do you gain possession of someone's advice or how they do their job when it's not giving you a direct benefit, it's something that belongs to someone else? Harrington, What you're doing is what happened in this case is Petitioner was attempting to obtain control over the fruits of the general counsel's labor. Sotomayor That's the problem. This is an obtaining-controlled concept. Harrington, Right. Sotomayor Because you're equating taking control with possession. That's where I'm having difficulty. Harrington, Well, this Court has repeatedly said that property and exclusive control of property are just different aspects of the same thing. They're different sticks in the bundle that make up the property. Here what Petitioner was trying to do is he was trying to dictate the substance of the recommendation, and in doing so he was trying to exercise the general counsel's right to make the recommendation, his right to do his job, and that was his property. He wasn't just trying to keep him from going to work. He was trying to literally dictate what the recommendation was, and that's how it was charged in the indictment. That's what the jury found. That was where the obtaining came in. The concept of property and control of property is well illustrated by this Court's decision in Carpenter. There, the property at one of the pieces of property at issue was confidential business information, which was taken from the Wall Street Journal. But it wasn't deprived, it wasn't really taken from the Wall Street Journal because the Wall Street Journal still had the information at the end of the day. What the Court found was taken from the Wall Street Journal was the ability to control, to have exclusive control over the information. Breyer, as I think about it in terms of the New York cases, as you write them up here, it sounds as if someone was trying to get control of a business. So I think business, land, labor, and capital. All right? I can see why somebody who is trying to get control of a whole business is trying to take land, labor, and capital. There may be no land there, but so what? And but a person who is trying to take control of another's job by just telling him what to do, 2 percent of the time, seems well across some kind of line. Well, I mean, you might have an obtaining question if it's only 2 percent of the time. No, no, no attaining question. I'm just thinking is it reasonable to call a secretary doing one job which takes 3 percent of her time that hour, property, in a way, is that different from taking control of Macy's? And it seems to me that probably it is. Well, I guess, I mean, it's sort of two different kinds of responses. One is that when you're asking if something is property, you want to look at it sort of on a class-wide or aggregate basis. If you have one single unauthorized download of a copyrighted song, that's not necessarily going to cause harm to the record company. No, I'm not worried about copyrights or other intangibles. That's not the issue. But I'm just saying you want to look at something in the aggregate on a class-wide basis, and the person's doing their job on a class-wide basis is something that is I lost track of what my second response was going to be. So anyway, the Hobbs Act clearly was targeted, it was trying to get at racketeering activity. It was trying to get at organized crime families. And Congress knew that one of the main means that organized crime families used was taking control of businesses. Now those cases might seem easier because taking control of a brick and mortar business may seem more obviously like property than taking control of a person's occupation or their job. But a person's right to labor is economically valuable to them and is property to them in the same way that the running of a business is. Now, Petitioner's view would, if it, I mean, his real view is that he would want to wipe out the heartland of Hobbs Act organized crime prosecutions, but I think his fallback position is that he wouldn't want to wipe out any extortion of a business that provides services instead of providing a tangible good. But that doesn't make sense either. If Petitioner had threatened harm to a plumber, if the plumber didn't come and fix his leaky faucet, he would have been extorting that plumber's labor and same thing for a gardener if he tried to get a gardener to come and mow his lawn. Now, he wouldn't end up with anything tangible at the back end. But what he would have taken from those laborers would be their right to labor. Kagan. Kagan. He would have ended up with the mowed lawn. He would have ended up with the thing that the service was providing him. The problem here is that there is no obtaining of anything that the person is getting in your theory. It's the same kind of obtaining here, because he wouldn't take the mowed lawn from the gardener. He wouldn't take a lack of leaking from the plumber. What he's taking from them is their services in order to get a particular result. It's the same thing here. He's trying to take from the general counsel his service of making a recommendation that's in his client's best interest, and he's trying to dictate the substance of the recommendation to try to get him to give a particular recommendation, a positive recommendation. Scalia. Why is that valuable to me? Why is it valuable to me? I can see how the job is valuable to me. I get paid to do the job. But why making one recommendation rather than another is valuable to me? I don't think it's valuable to me. It's only because I'm an honest person that I want to make the proper recommendation. But to say that it has any economic value, that I recommend A rather than B, it's totally neutral whether one is more economically valuable than the other. It has economic value because the lawyer's job is to give his advice in keeping with his client's best interest. It's the same thing as the record company. A single unauthorized download. Scalia, that's all very true, and an honest lawyer should do that. But that doesn't prove that it's economically valuable for the lawyer to give the right advice rather than the wrong advice. It is. If Petitioner had tried to blackmail the general counsel every week to give a different recommendation than what he wanted, the result would have been the general counsel would have lost his job, he would have lost his stream of revenue, might have been disbarred. That's economically valuable to him. It's the same thing as a single download of a record that might not cause economic harm to a record company, but it's still taking property, because in the aggregate, the right to that copyright or trademark has the copyright has value to the record company. It's important to keep in mind the factual scenario here. Here Petitioner was trying to use blackmail to coerce a State agent into doing something that was against his will in order to get a $35 million investment from the State. Now, again, this might seem like a harder case than if he was trying to co-opt the running of a brick-and-mortar business, but what he's trying to do is co-opt an individual's doing of his job. He's trying to dictate the substance of the recommendation. In doing that, he's obtaining property from the victim. Kagan. Kagan. Ms. Harrington, I guess I'm just confused, and this goes back again to Justice Kennedy's initial question, why it wasn't charged in a much simpler way where the property is not a right by a lawyer to do his job, which it seems no other person can get, but where the property was the contract, was the investment and the fees. And the theory was that a threat was used in order to get that investment and fees. And why wasn't, why isn't that just a, you know, I look at the facts here and I say extortion, but not on your theory, on my theory. And why wasn't that simple theory used? Well, it was charged on several different theories, and one of the theories was that he was trying to gain the commitment to the investment. Now, the jury was given choices. The jury circled the lawyer's positive recommendation as the property that was obtained. I assume that's because the evidence in the case, the e-mails from Petitioner to the general counsel talked about the recommendation. And so that was a tangible thing in the jury's mind, that was sort of, that there was a really direct connection between what Petitioner was saying, what he was trying to do, and the recommendation. Kagan. But you don't think that there's any reason why it, in a future case, it couldn't be charged just the way I said it? I don't think. I think it could have been charged that he was trying to get the money here. Was that one of the choices the jury had? No. That he was trying to get the commitment, that was one of the choices. What they circled was the recommendation. Now, who knows why a jury does anything. I assume that, like I said, it's because that was what the e-mails were about. They were about the recommendation. I didn't think they circled recommendation. They circled his honest advice, didn't they? No. They circled, it says the general counsel's recommendation. This is on the JA-142. That's where it starts. I'm sorry. JA-142. What they circled was the general counsel's recommendation to approve the commitment. And I think that wording is very helpful to us, because it's not just that he's trying to obtain a recommendation from the general counsel. He's trying to obtain a particular recommendation, the recommendation to approve the commitment. I think that encapsulates both the property and the obtaining that is the theory of our case. The general counsel's job was to give his legal advice. The Petitioner was trying to dictate the substance of that legal advice. His property interest is in doing his job. The Petitioner is trying to take control of the doing of the job and therefore trying to take the general counsel's property. Kennedy, it does seem to me important that you can't give us a common law case, because common law is extortion. In common law, the extortion is the other way around. It's usually the official who's doing the extorting. It was always the official who was doing extorting. Kennedy, at common law, could anyone ever extort an official, or we just don't have those cases? No, at common law, it was only limited to acts by an official. There was no — and the Court has recognized that when Congress enacted the Hobbs Act, it expanded the reach of extortion in that sense, and the same way that New York did when it enacted the State extortion law. And I do think it's important to keep in mind that the Hobbs Act is based on the New York law, and we don't want to just ignore the New York cases that construe the word property to mean the running of a business and the doing of a job. Scalia, but not the obtaining of property. But it wasn't — I mean, it's true that there weren't cases. That's true. Not the obtaining of property. I can give that point. But it was defining the word property, and that property is used twice. And so, again, it's a separate question here whether the property was obtained. We think it's clear that there was property. We think it's clear that the property was obtained as well, but those are two separate questions. You point out, of course, that it was based on the New York law, but what do you do with the point that they did not carry forward the separate crime of coercion, which was in the New York law, but not in the Hobbs Act? It's true. I mean, it was a separate crime of coercion. There was a separate crime of coercion under New York law. I think, you know, Congress conceived of the Hobbs Act as a property, as a crime against property, and so it didn't want to include coercion. It included extortion and robbery. Of course, every extortion crime. What do you do with the fact that the State authorities did charge it under coercion? In this case. Well, I think it's important to note, and Petitioner doesn't mention this, that the attempted extortion charge he was initially charged with was a misdemeanor, and the attempted coercion charge he ultimately ended up being charged with in State law was a felony. So I think that explains what was going on there. And it's a good example, it's a good illustration of why it's hard to judge ex post what happened, you know, what was motivating different charging decisions. Scalia, what do you think would be covered by coercion that wouldn't be covered by the government's extortion theory here? Give me an example of coercion. So anything that doesn't involve property. So if you're trying to coerce someone. For example. So trying to coerce someone to marry someone they don't want. I think in the Shidler case. Why isn't that property? You know, my choice of marrying whom I want, why isn't that as much property as my ability to perform my job the way I want? Because I think it's more properly viewed as a liberty interest. It's not a source of economic value in the sort of traditional sense. I think if you take the Shidler case. A lot of people marry for money. It's true. I walk into that one. I think so let's take the Shidler case for an example. There were different types of property that were initially alleged in that case. One of them was the right of women to access the services of the clinics. This Court distinguished that from the other alleged property interests, which were the running of the business that was the clinic. And the Court said that the right of women to access the services of the clinics was really more of a liberty interest, and the running of a business was really more of — it didn't say it was property because it didn't have to decide that, but it said that's really more in the nature of property. That was the property right alleged. Roberts. Roberts. It seems to me you could characterize the right to work as more of a liberty interest than a property interest. I think it's both. And so someone — the general counsel could have been coerced in this case if he had been prevented from going to job, to his job. But here what Petitioner was trying to do, again, was to take the substance of the job. He was trying to take the fruits of the labor of the general counsel by trying to dictate the substance of the recommendation. Roberts. So you draw a distinction between extorting someone not to go to work and extorting him how to do his job once he's at work? Not on the basis of property, but on the basis of obtaining. The former is there's no obtaining, and the latter there's obtaining, because what you're doing is you're exercising the person's right to do their job. And the Court has said again and again that exclusive control of property is an essential element of all personal property, of all private property. Why just out of — as long as we're idly speculating, didn't you use 18 U.S.C. 875? Whoever would attempt to extort from any person a, you know, anything of value. Well, we did use it, and he was — I mean, there are five convictions under 875. What happened is in this case we conceded that section 875 uses the word extort. We conceded in the court of appeals that extort has the same meaning as extortion under the Hobbs Act. And so if there wasn't extortion under the Hobbs Act, there wouldn't be. You don't have property in there. You have a thing of value. Is there some — I mean, it just seems obvious you'd be in a much stronger position when you say that the recommendation not to buy or to buy a particular service from somebody is a thing of value. That's true. In this case, again, we have treated them as the same, but I think you would want to reserve for another case the question whether section 875. Have they in the court been treated that thing of value means property? I think thing of value is a broader term than property. Scalia We don't know. Okay. Harrington Right. So we haven't made an argument about 875 here. We've conceded that whatever the result is as to the Hobbs Act would control us to 875. But I do think that's a question for another case if we don't prevail in this case. Scalia But it at least makes available the argument that you don't have to go this far, that there are other provisions that would enable you to get to this person. Harrington Well, again, I don't think we're going far. Scalia So why, instead of inducing us to define property so broadly that it's unrecognizable as far as I'm concerned? Harrington Justice Scalia, you've already defined it this broadly. In cases dealing with section 20 of the Clayton Act, the due process clause, the scope of a court's equity jurisdiction, the Court has said that the running of a business is property. The Court has also said that pursuit of an occupation is property. Scalia Are you talking about property for purposes of extortion, the common law crime of extortion? Harrington I hear what you're saying, but what I'm saying is that property is property. And it's true that in extortion the property has to be obtained for there to be a crime. That work is done by the word paint. Scalia I don't think property is property. I think property can have a different meaning with regard to various provisions of the law. And the provision of the law defining extortion brings with it a whole baggage of common law cases. And that may well be different from the word property used in some other Federal statute that does not invoke the common law of extortion. Harrington But this Federal crime of extortion brings with it the baggage of the New York State extortion law. And the New York cases said in that law the word property includes the running of a business and doing a job. It's true that that wasn't the property being extorted in those cases, but that's what they said property means. And if you're worried that those things can't be obtained, you don't need to worry, you don't need to have a special definition of property to take care of that, because the Hobbs Act already requires that property be obtained before there is extortion. So there's no need to have a redundancy built in for that. Again, I can understand how the main Hobbs Act sort of heartland cases which involve the co-opting of a brick-and-mortar business seem like easier cases, and you might want to draw a line between the running of a business and the doing of labor. But a person has a property interest in doing their job the same way that they have a property interest in running a business. The fact that they work for someone else shouldn't mean that they have less of an interest in doing their job than if they run their own business. Doing a job is a source of economic value to a person, and the Court should consider that as property, and the right to exercise control over doing their job is also property. If the Court has no questions. Roberts. Thank you, counsel. Mr. Clement, 5 minutes. Thank you, Mr. Chief Justice. A couple of points in rebuttal. Ms. Harrington started by pointing to the language in McNally, and she is absolutely correct that at the same time that McNally got rid of the honest services prosecution that was brought there, they reserved two possible prosecutions. One would be the obtaining of money where there was a difference in what the government paid for and what the government got. The other thing that she alludes to is the Court did say, well, maybe there's a possibility that you could prosecute based on the government's loss of control over its allocation of these workman's comp policies. The problem is, of course, that McNally precedes Cleveland. And in Cleveland, the government seized on that language and said, well, even if the government gets it, it is property, and that got exactly zero votes from this Court. So I think that argument is no longer viable. Ms. Harrington also points to these New York cases about the scope of property for purposes of 851 of the New York Penal Code. But, of course, what we're talking about is 850 of the New York Penal Code, the kind of property that can be obtained. I think it's common ground that they're not coextensive. There's property that you can obtain that you can't threaten. Indeed, the classic thing you obtain in an extortion case is money, and I'm not sure how you really threaten money. You can threaten to take money from someone, but you don't really threaten the money. So these are different terms. So relying on the Berendice case, which is the same case that Justice Stevens relied on in dissent in Shidler II, just doesn't work. Now, she's also absolutely correct that extortion at common law only involved official extortion. But that doesn't mean that there aren't common law places to look for a relevant definition of property, because the same basic concept was in the larceny statutes, the burglary — not statutes, the common law crime of burglary, larceny, and embezzlement. And, indeed, to this very day, New York refers to extortion as larceny by extortion. And if you go to those New York cases, the place I would point you to is the Ashworth case, which is cited in both of our briefs. This is a case that makes very clear that under New York law, they didn't even think that services at all were property. This is a case where the foreman of a mill gets the bright idea that he's going to do some work for his own company using the mill's facilities, and he's charged with larceny. And the Court in that case says, no, that's not larceny. You didn't obtain any goods. Classic sort of common law property is, in order to be the kind of property that you can steal or extort, it has to be movable. One of the elements of the common law crime is asportation, literally moving it. And they say all of that, and they reject that argument, and they use a line which I think really captures what's going on here. They say, well, maybe you could conceive of such a conception of property, but they say to conceive this requires a certain intellectual flexibility, which is probably not possessed by the average person. And I would simply submit it also is not the kind of flexibility that should be possessed by the average judge in a criminal case. Sotomayor, I think if we take your argument to its logical conclusion, what you're telling us is do away with the Second Circuit's Troppiano decision and the large progeny of cases that come from it. The most common is the threat to a business that says pull out of this market because we don't want you in it. And we want all of the customers, and courts routinely have said, that is a Hobbs Act violation. You're using the threat of force to tell people to keep out of a particular market. Today you're telling us that under your theory of the Hobbs Act and your definition of property, that doesn't count as a Hobbs Act violation. Clements, Well, a couple of things, Justice Sotomayor. I went back to the Troppiano case, because it is sort of the progenitor of this whole line of Second Circuit cases, and I noticed two things. One, I noticed it was written by a district court sitting by designation. So, I mean, I don't mean anything by that other than this is not Marbury. Second, I would say that the second thing I noticed is that that's. Sotomayor, I think when I sat as a district court judge, I would have been insulted by that. Clements, Well, it's a good thing you're no longer sitting in that capacity, Your Honor. Sotomayor, It's really hard for you. Clements, I certainly mean you no offense. You could write Marbury here. So the difference is, Your Honor, that that could have also been, I think, actually prosecuted as a property crime, because in that case there were customer accounts that were obtained, and those customer accounts, as the facts of Troppiano discuss it, actually had value. They could have been transferred from one business to another. So I think what would happen in the Second Circuit, if you decide this case the way we would like you to, is the government is going to have to be careful. They're going to have to write their indictments to focus on things like money or obtainable property, and they can't get sloppy and put together these autonomy interests and call them property. Thank you, Your Honor. Roberts. Thank you, counsel. The case is submitted.